## THE REMEMBRANCE.

(District Court, E. D. Pennsylvania. August 26, 1914.)

No. 28.

1. SHIPPING (§ 84*)—LIABILITY OF VESSEL—DUTY TO STEVEDORE'S EMPLOYÉS.

An employer must use proper and reasonable care to provide a reasonably safe place in which to have his work done, and proper and reasonably safe appliances with which to do the work, but a steamship which contracts with a stevedore to discharge the vessel is not the direct employer of the stevedore's men, and that fact must vary, to some extent, the measure of its duty and responsibility to them.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 342, 349–351; Dec. Dig. § 84.*]

2. SHIPPING (§ 84*)—LIABILITY OF VESSEL—INJURY TO STEVEDORE.

Libelant was a winchman employed by a stevedore in discharging respondent ship. The winch was furnished by the ship, and was intended to be operated by a man standing, but another employé of the stevedore who preceded libelant at the winch had rigged a seat which, however, was not secure, and by reason of its falling, libelant who was using it, was caught in the machinery and injured. *Held*, that there was no ground upon which the vessel could be held liable for the injury.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 342, 349–351; Dec. Dig. § 84.*]

In Admiralty. Suit by William H. Spilker against the steamship Remembrance. Decree for respondent.

John A. Toomey, of Philadelphia, Pa., for libelant.

Edward F. Pugh, of Philadelphia, Pa., and Convers & Kirlin, of New York City, for respondent.

DICKINSON, District Judge. The special findings of facts and conclusions of law filed herewith give the particular facts in this case. The general facts necessary to an understanding of the ques-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tions involved are few. The libelant was in the employ of stevedores who were unloading the steamship Remembrance. She had a cargo of iron ore. The operation of unloading was performed by the use of buckets. They were required to be lowered into the hold, filled, hoisted out, and hauled athwartship to and the contents dumped into cars on the wharf. This was accomplished by means of winches. These belonged to the ship and their use was given to the stevedores. Beyond furnishing the winches and rigging them the ship had nothing to do with their operation. At the time he was hurt the libelant was working as winchman. The winches were made and rigged so as to be operated by the winchman standing. The winchman who preceded the libelant had rigged up a seat so that he could work while seated. This consisted of a hatch plank supported at the one end by being swung in the bight of a rope fastened to the mast and at the other end by resting on an iron frame and on the rounded top of the flanges of the cylinder head of the winch. The libelant was using this seat with his right foot against the part of the winch next to a heavy driven wheel. This wheel had open spaces somewhat like those between the spokes of an ordinary carriage wheel. The libelant being jostled by the vibration of the lever which he held in his hand, his seat was upset and his right foot and leg pushed between what may be called the spokes of the driven wheel. His leg was so crushed as to require amputation.

[1] Following back the chain of causes we find the nearest responsible cause to be either the act of the libelant in using an obviously insecure seat, or some one in supplying it for his use. Had the seat been part of the place provided the libelant in which to work and did the case turn solely upon the question of whether the proximate cause of his hurt was his own act or that of the employer, his conduct would be of importance. It is unnecessary to pass upon what the libelant did, because in any event the case resolves itself into the question of the negligence of the respondent. Whatever views one may entertain as to the policy of throwing the entire burden of personal injury loss upon the injured, the commonest sense of justice demands that it should not be thrown by law upon another unless that other be in some way to blame for the damage done. If there be a liability, the grounds of it must be known and may be formulated into a proposition. It is a principle of the law of negligence that the employer must, among other things, use due and proper or, in other words, reasonable care to provide a reasonably safe place in which to have his work done and proper and reasonably safe appliances with which to do the work according to the usages, requirements, and ordinary risks of the business in which he is engaged. A like obligation rests upon him to use due and proper care to keep them so. The libelant here, however, has pursued, not the employer for whom, but the ship on which, he worked. This must vary, to some extent at least, the measure of duty and of responsibility.

[2] The case of Foster v. Bucknall, 206 Fed. 415, 124 C. C. A. 297, sustains the libelant in his proposition that a ship which bene-

fits by the work done, and which provides the place where and supplies the appliances with which the work is done, is bound to the same degree of care above defined so far as affects what is provided. Had, therefore, the damage here been caused by anything in the conditions of the place or the condition of the appliances provided by the ship, the responsibility of the ship could be found. The ship was not, however, the employer, and had no control over the workmen. If, therefore, the libelant came to his hurt not through anything which the ship had furnished but to something subsequently done by the employer or his employés, the exculpation of the ship is complete. Counsel for libelant recognize this, and advance the proposition of fact that the injuries were caused by a defect in the machinery provided. The fact is set up that there was something out of repair in the winch, causing it to vibrate, and that this jostled the libelant from his seat. This we cannot find as a fact. The libelant was hurt because of the insecurity of the plank on which he was seated. This seat was not provided by the ship, and it was improvised by the stevedores without its consent and by men not under its control.

Waiving the proposition advanced by the respondent, to which reference has already been made, that the use of this insecure seat was the voluntary act of the libelant who thus brought his hurt upon himself, the most which can be said for him is that the seat was provided with the acquiescence of the employer and was used as found and therefore in effect provided by the master. The employer further knew of this use and at least acquiesced in it. All this, however, as the ship was not the employer, falls short of visiting responsibility or liability upon the ship. Whatever the responsibility of the employer may be, that of the ship cannot extend beyond responsibility for the condition of what the ship has provided. To impose liability upon the ship, it is necessary to make good one of three propositions. It must be held that the ship was answerable, not only for what it did provide, but also, in view of the difficulty of operating the winches with the winchman standing, it was its duty to have provided seats. We do not feel warranted by any known principle of the law of negligence or by any authority to so hold. The second ground of possible liability is that, although the condition of the winch did not cause the injuries to the libelant it did cause the lever to vibrate or shake, and that this contributed to the injuries by causing the plank to be displaced. It is a principle of the law of negligence that one guilty of negligence is answerable if his negligence was a contributory cause to the injuries sustained, but this would compel a finding that the respondents here were bound to anticipate that the winch would be operated by the winchman from an insecure seat. This we cannot find. This leaves as the only other possible ground of liability the proposition of fact, from which a finding of responsibility might or might not arise, that the injuries of the libelant were received, not because of the falling of the plank, but because he was thrown from his seat by the movement of the lever. Unfortunately for the libelant we cannot make this finding. There is nothing in the evidence to justify it.

The conclusions of fact and law reached are those already stated that the cause of the injuries to the libelant was the insecure plank on which he was seated, and as this seat was not provided by the ship, she was without blame and her owners free from legal negligence.

A decree dismissing the libel, with costs to the respondent, may be submitted.